UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FELIPE VALENCIA JR.,

         Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

         Defendant.

                              /

Case No.  1:16-CV-143

HON. GORDON J. QUIST

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff  seeks review of the Commissioner's decision that he was no longer entitled to child insurance benefits (CIB) or supplemental security income (SSI).

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

On August 13, 2008, the Social Security Administration determined that Plaintiff was disabled as of October 13, 2007, a date when Plaintiff was sixteen years old. (Page105.)  On May 11, 2012, it determined that Plaintiff was no longer disabled as of May 1, 2012. (PageID.116–119.) On September 26, 2013, a disability hearing officer upheld the decision terminating Plaintiff's benefits. (PageID.148–150.)  Plaintiff subsequently requested a hearing before an administrative law judge (ALJ).  (PageID.155–156.)  On March 11, 2014, Plaintiff received a hearing before an ALJ. (PageID.64–104.)  Though advised of his right to counsel, Plaintiff chose to proceed unrepresented, and signed a statement affirming his decision.  (PageID.68–71, 308.)  On July 11, 2014, the ALJ issued his decision finding that Plaintiff was not disabled. (PageID.41–56.)  On December 11, 2015,

the Appeals Council denied review, making it the Commissioner's final decision.  (PageID.29–33.)

This pro se action followed.

## ALJ'S DECISION

ALJs employ an eight-step sequential analysis in Title II claims and seven steps in Title XVI claims.  Steps two through eight in Title II claims mirror steps one through seven in Title XVI.  *See* 20 C.F.R. §§ 404.1594, 416.994.  At step one in Title II claims, the ALJ examines whether the individual is engaging in substantial gainful activity. If the answer is yes, the individual's disability has ended.  Step two is an examination of whether the individual had an impairment or combination of impairments which meets or equals the severity of a listed impairment.  If the answer is yes, disability continues.  Step three is an inquiry as to whether there had been medical improvement.  Step four is an examination whether the medical improvement is related to the individual's ability to perform work.  Step five is an analysis conducted if there has been no medical improvement or the medical improvement is not related to the individual's ability to perform work.  Step six is a determination whether the individual's current impairments are severe.  If there is no severe impairment, the individual is not disabled.  Step seven is an assessment of the claimant's "ability to do substantial gainful activity" in accordance with 20 C.F.R. § 404.1560.  That is, the ALJ determines the individual's residual functional capacity (RFC) based on all his current impairments and considers whether he can perform past relevant work.  If he can perform such work, he is not disabled.  Step eight is an administrative finding whether the individual can perform other work in light of his age, education, work experience and RFC.  If he is capable of performing other work, he is not disabled. 20 C.F.R. §§ 404.1594(f), 416.994(f); *see Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 307–08 (3d Cir .2012); *Delph v. Astrue*, 538 F.3d 940, 945–46 (8th Cir. 2008). There is no presumption of continuing disability.  *See Kennedy v. Astrue*, 247 F.

App'x 761, 764 (6th Cir. 2007) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 n.1 (6th Cir. 1994)).

The ALJ began his discussion by finding that the administrative decision dated August 13, 2008 was the most recent favorable decision that Plaintiff was disabled. It was "the 'comparison point decision' or CPD." (PageID.43.) At the time of the CPD, Plaintiff had the medically determinable impairment of testicular cancer that was severe enough to meet the requirements of listing 13.25. (PageID.43.) Continuing with the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity on or after May 1, 2012, the date his disability ended. (PageID.43.) The ALJ found that the medical evidence established that "as of May 1, 2012," Plaintiff had the medically determinable impairments of: (1) history of testicular cancer status-post orchiectomy; (2) left foot drop; (3) asthma; (4) obesity; (5) borderline intellectual functioning; (6) learning disorder; and (7) adjustment disorder. (PageID.43.) Next, the ALJ found that these impairments did not meet or medically equal the severity of a listed impairment. (PageID.43–44.) The ALJ continued by finding that medical improvement occurred as of May 1, 2012, and that this improvement is related to work because as of that date, Plaintiff no longer met or medically equaled the listings that were met at the time of the CPD. (PageID.46.) The ALJ next determined that Plaintiff continued to have severe impairments on and after May 1, 2012. (PageID.46–47.) At the next step, the ALJ found that as of his medical improvement date, Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) limited to lifting and carrying ten pounds frequently and up to twenty pounds occasionally. The claimant can perform no more than frequent forceful gripping or grasping with the right upper extremity. The claimant can stand and walk for two hours total, and sit for six hours total in an eight-hour workday with normal breaks. However, the claimant requires the option to alternate sitting and

standing every twenty minutes. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant cannot ambulate over uneven terrain or operate foot controls with his left lower extremity. Furthermore, the claimant can have no concentrated exposure to hazards such as unprotected heights and dangerous moving machinery. The claimant also can have no concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, or areas of poor ventilation. Additionally, the claimant can follow only simple instructions, and he is limited to performing simple, routine, repetitive work tasks that involve simple instructions and no fast-paced production requirements or specific productions quotas.

(PageID.47.) With that in mind, the ALJ determined that Plaintiff had no past relevant work, but that beginning on his medical improvement date, Plaintiff was able to perform a significant number of jobs. (PageID.54–55.) The ALJ relied on the testimony of a vocational expert in doing so. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform the following work: office helper (2,800 Michigan jobs and 32,000 national jobs), information clerk (2,000 Michigan jobs and 25,000 national jobs) and inspector (1,800 Michigan jobs and 15,000 national jobs). (PageID.99.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.55.)

Accordingly, the ALJ entered a decision that found Plaintiff's disability ended on May 1, 2012, and that he remained not disabled through the date of the decision. (PageID.55.)

### DISCUSSION

On April 25, 2016, the Court issued a Notice Regarding Consent and Directing Filing of Briefs. (PageID.701–702.) With respect to the filing of briefs, the Court indicated that "Plaintiff's initial brief . . . must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand." (PageID.701.) Plaintiff's initial brief is just over two pages in length and fails to identify any alleged error

supporting relief in this matter. (PageID.709–711.)  Nevertheless, given Plaintiff's pro se status, the

Court interprets Plaintiff's brief as raising the two claims addressed below.

        **1.**        **Substantial Evidence Supports the ALJ's Determination that Plaintiff Underwent Medical Improvement.**

Plaintiff appears to claim that the record is devoid of any evidence demonstrating

medical improvement.  As the Sixth Circuit has recognized, an ALJ's decision regarding the date

on which a claimant's disability ended need not be supported by "smoking gun medical documents"

generated on the date in question.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009).

Instead, the ALJ's determination as to the date on which a claimant's disability ended must simply

be "not so wholly arbitrary so as to carry the ALJ's decision outside the 'zone of choice' that the

ALJ possesses in rendering disability decisions." *Id.*

"Medical improvement" is defined in 20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1)

in relevant part as follows:

> Medical improvement is any decrease in the medical severity of your
> impairment(s) which was present at the time of the most recent
> favorable medical decision that you were disabled or continued to be
> disabled. A determination that there has been a decrease in medical
> severity must be based on changes (improvement) in the symptoms,
> signs and/or laboratory findings associated with your impairment(s).

*Id.*  The ALJ began by noting that prior to his improvement date, Plaintiff was diagnosed with

testicular cancer that had spread to his lungs, stomach, kidney, and left eye.  (PageID.48.)  During

treatment, Plaintiff suffered an injury to his aorta which required several corrective surgeries in

September 2008.  (PageID.48.)  The ALJ concluded, however, that Plaintiff "has not generally

received the type of medical treatment one would expect for a totally disabled individual since May

1, 2012.  Specifically, the record reveals relatively infrequent medical appointments and significant

gaps in the claimant's history of treatment for the allegedly disabling symptoms during this period."

(PageID.50.)  Plaintiff claims that the ALJ erred in this conclusion because he has ongoing issues

due to nerve pain and lower extremity numbness and cramping.  (PageID.709.)

The ALJ discussed the issue as follows:

The record does not suggest that the claimant pursued further direct treatment for these conditions until January 2011, a period of more than two full years.  At a July 2010 psychological evaluation, it was noted that the claimant ambulated very slowly (Ex. 10F).  In January 2011, though, a CT scan of the claimant's abdomen, pelvis, and chest revealed stable findings (Ex. 14F/7).  Subsequent CT scans of the claimant's abdomen, pelvis, and chest have confirmed no evidence of recurrent metastatic disease (ex. 14F/3-6).

In October 2011, the claimant was referred for a physical therapy evaluation to address his complaints of tingling, decreased strength, and foot drop in his left lower leg since his 2008 surgeries.  The claimant noted that he had been provided with an ankle-foot orthotic ("AFO") to address these symptoms, but acknowledged that he stopped wearing it after developing a sore.  Physical therapist Brian Fulton encouraged the claimant to have his AFO adjusted (Ex. 28F).  At a March 2012 appointment with Robert Cali, M.D., the claimant report experiencing some left lower extremity pain and foot drop, but he denied any significant claudication.  Dr. Cali observed that the claimant had normal peripheral pulses with no edema, clubbing, or cyanosis.  Dr. Cali also conducted ankle-brachial index studies, which revealed only mild insufficiency bilaterally (Ex 16F/5).  One month later, Dr. Cali performed a Duplex examination of the claimant's axillo-femoral  bypass graft, which demonstrated normal findings with a patent graft (Ex. 16F/9).

In late April 2012, the claimant attended a consultative examination with Donald Sheill, M.D.  The claimant again reported experiencing numbness and tingling in his left lower extremity, but he acknowledged that "Kepra and Lyrica have helped."  The claimant also indicated that his AFO brace was continuing to cause thick calluses on the plantar MP joint area.  Dr. Sheill observed that the claimant exhibited left foot drop with a mild steppage gait, but stressed that his gait was well-compensated and stable.  Dr. Sheill also noted that the claimant had tenderness to the left foot and lower leg with a subjective tingling sensation, as well as a thick callus under the second and third metatarsal head of the plantar left foot.  Ultimately, Dr. Sheill assessed the claimant with a history of retroperitoneal cancer with complication of left foot drop.  Dr. Sheill

added that the clinical evidence supported the need for an AFO, and advised the claimant that "(w)ith a change in his AFO or other solution to the painful callus issue, he may be able to move about more quickly and be more productive at work" (Ex. 17F).

At psychological consultative examinations in May 2012 and July 2012, it was observed that the claimant presented with a slow but normal gait and good posture (Ex. 18F, 22F). In September 2012, the claimant presented to the emergency department complaining of a left leg injury with swelling and concerns for a blood clot given his medical history. Boyd Kroeze, M.D., observed that the claimant had bruising and slight fullness to the lateral aspect of his left lower leg, but stressed that he retained a full range of motion of the left lower extremity with intact pulses and intact sensation. Dr. Kroeze assessed the claimant with a contusion (Ex. 30F/8). At a follow-up appointment later that month, Barbara Sawicki, M.D., also assessed the claimant with a left leg contusion, noting that he retained a normal gait and a good range of motion of the left lower extremity with no edema (Ex. 31F/3).

The record does not suggest that the claimant pursued further treatment for his symptoms until May 2013, a period of approximately eight months. In May 2013, the claimant told Michael West, M.D. , that he was continuing to experienc[e] some chronic left foot drop and numbness in his left leg. Dr. West noted that the claimant retained intact reflexes and good pulses. Dr. West diagnosed the claimant with peripheral vascular disease, but concluded that this condition was stable based on the claimant's history, physical examination, and vascular studies (Ex. 32F/3). Six months later, the claimant attended a follow-up appointment with Christopher Chambers, M.D., Ph.D. The claimant told Dr. Chambers that he experienced some lower extremity claudication after walking any distance at a quick pace, but he also indicated that he could walk longer distances at a slow pace. Dr. Chambers observed that the claimant retained normal musculoskeletal range of motion and normal reflexes. Dr. Chambers also stated that vascular studies "demonstrate that the (bypass) graft is patent throughout with adequate blood flow to both lower extremities." Notably, Dr. Chambers advised the claimant to continue with routine exercise (Ex. 32F/10).

(PageID.48–49.) Thus, as indicated, the ALJ gave a thorough and accurate recitation of the medical

evidence. Despite Plaintiff's complaints, the record demonstrates that he has intact sensation, range

of motion, and gait. The record was also thoroughly examined by the agency consultants who found

that Plaintiff had the RFC for light work.  (PageID.594, 612.)  While it is patent that Plaintiff

continues to suffer from severe impairments, the ALJ reasonably found that these impairments were

no longer of a disabling severity as of May 1, 2012.  Plaintiff's claim of error will be denied.

### 2.      The ALJ's RFC Determination Is Supported by Substantial Evidence.

Plaintiff next arguably raises a claim that the RFC does not account for all of his

impairments.  RFC is the most, not the least, a claimant can do despite his impairments.  20 C.F.R.

§ 404.1545(a)(1); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).  The

administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis

and it is applied at steps 4 and 5.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three

to step four, we assess your residual functional capacity. We use the residual functional capacity

assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ

found that Plaintiff retained the RFC for a limited range of light work. (PageID.47.)  As shown

above, the ALJ carefully considered the evidence related to Plaintiff's surgeries, including his

complaints of nerve and leg pain.  Plaintiff has not shown that the restrictions that the ALJ included

in his factual finding regarding Plaintiff's RFC, such as limiting Plaintiff to only two hours of

standing and walking, failed to adequately take into account Plaintiff's functional limitations

stemming from the complained of impairments.  Accordingly, this argument will be rejected.

### CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.**

A separate judgment shall issue.

Dated:  October 19, 2016                                          /s/ Gordon J. Quist
                                                                          GORDON J. QUIST
                                                                          UNITED STATES DISTRICT JUDGE